**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHERYL A. MARTINEZ, ) | |
| ) | CASE NO.    1:08-CV-01521 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Cheryl A. Martinez ("Martinez") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

## I. Procedural History

On June 9, 2005, Martinez filed an application for POD, DIB and SSI alleging a disability onset date of November 15, 2004 and claiming that she was disabled due to back problems and depression. Her application was denied both initially and upon reconsideration. Martinez timely requested an administrative hearing.

On November 26, 2007, Administrative Law Judge Mark M. Carissimi ("ALJ") held a hearing during which Martinez, represented by counsel, testified. Gottfried Spring, M.D., testified as a medical expert ("ME") and Nancy Borgeson, Ph.D., testified as a vocational expert ("VE"). On December 26, 2007, the ALJ found Martinez was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Martinez claims the ALJ erred by: (1) employing an improper evaluation when considering whether substance abuse was a material contributing factor; and (2) failing to proffer an accurate hypothetical to the VE.

## II. Evidence

*Personal and Vocational Evidence*

Born on May 22, 1957 and age fifty (50) at the time of her administrative hearing, Martinez is a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d) & 416.963(d). Martinez has an associate's degree in applied human science and human resources and past relevant work as a teacher, a teachers' assistant, and activity coordinator.

*Medical Evidence*

On April 19, 2001, Bharat Shah, M.D., performed a caudal epidural steroid injection with fluoroscopy to treat Martinez's lumbar radiculopathy. (Tr. 87.)

On June 20, 2005, Martinez told Dr. Shah that she had been a "wreck" since losing her job the previous November and since her companion of thirteen years had left her. (Tr. 94.) Dr. Shah noted Martinez had lost thirty pounds, been to the emergency room ("ER") several times, and had an upcoming appointment with a psychiatrist. *Id*. Dr. Shah noted hypothesia on the left at L4, L5 and S1, as well as on the right at C5, C6 and C7. *Id*. He also noted the following: muscle tests were within normal limits; deep tendon reflexes were +1 bilaterally; motor systems were intact or within normal limits with no pronator drift; and Martinez was alert with no gross deficits but was very emotional and making incoherent sentences. (Tr. 94-95.) Martinez denied any use of illegal drugs or alcohol. *Id*. Dr. Shah diagnosed lumbar disc displacement/herniation, spinal stenosis of lumbar region, and cervical radiculitis/root compression. (Tr. 95.) Treatment plans included the continuation of Ultram and cervical epidural injections. *Id*. Dr. Shah's diagnosis remained unchanged through October 2007. (Tr. 388-409.) Dr. Shah prescribed muscle relaxants, pain medication, and anti-inflammatory agents. (Tr. 87, 95, 388-404.) He also administered epidural blocks. *Id*.

On June 23, 2005, Martinez was hospitalized for five days. (Tr. 154.) She was diagnosed with substance-induced mood disorder, cocaine abuse, personality disorder not otherwise specified with dependent and histrionic features, chronic pain syndrome, urinary tract infection, and multiple self-inflicted skin lacerations. *Id*.

On June 30, 2005, Martinez was seen by Marcia Lara, LPCC, at the Nord Center for a

diagnostic assessment. (Tr. 136-46.) According to Martinez, she sought treatment for depression, hopelessness, anxiety, and cocaine abuse. *Id*. She had been "using cocaine to stay awake all night" since February of 2005. (Tr. 136-38.) She had also abused alcohol in the past and indicated that she last used alcohol in August of 2000. (Tr. 138.)

On August 2, 2005, psychologist Richard N. Davis examined Martinez at the request of the Bureau of Disability Determination. (Tr. 176.) Davis diagnosed cocaine abuse and adjustment disorder with anxiety. (Tr. at 181.) He found that Martinez did not have problems getting along with co-workers and supervisors at her last place of employment. (Tr. 182.) He also found that Martinez would be capable of understanding and following instructions when stabilized emotionally. *Id*. He noted that she performed at a fairly responsible job until November of 2004. *Id*. However, at the time of the examination, Martinez was not dealing well with the stresses and pressures of her life and she may have been withdrawing from cocaine, which she started using after the breakup of a long relationship. *Id*. Davis believed that if Martinez was granted benefits, she should not be considered capable of money management until she stabilizes emotionally and has a period of time when she is free of drugs. *Id*.

On October 9, 2005, Kamala Saxena, M.D., completed a Physical RFC Assessment. (Tr. 201-208.) Dr. Saxena opined that Martinez could do the following: lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and, push or pull objects within the aforementioned weight restrictions. (Tr. 202.) He further found that Martinez could occasionally climb ladders, ropes, or scaffolds, but had no other postural, manipulative, visual, communicative, or environmental limitations. (Tr. 202-205.) On April 15, 2006, E.S.

4

Villanueva, M.D., agreed with Dr. Saxena's assessment. (Tr. 43.)

On October 8, 2005, Carl Tishler, Ph.D., reviewed Martinez's medical records and completed a Mental RFC Assessment. (Tr. 197-200.) Dr. Tishler found that "[Martinez's] psychological impairments are severe and [medical evidence of record] supports a [Medical-Vocational] grant, however [drug addiction and alcoholism] is material and so the claimant must be denied." (Tr. at 199.) He found marked limitations in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (Tr. 198.)

On April 12, 2006, Michael D. Wagner, Ph.D., also reviewed Martinez's medical records and completed a Mental RFC Assessment. (Tr. 241-44.) Dr. Wagner stated that Martinez's "problematic use of drugs does not allow for a grant. She is restricted to simple, routine jobs not involving excessive interaction with others or [stress] or changes in the job environment." (Tr. 243.) Dr. Wagner did not find marked limitations in any category, but found moderate limitations in many areas. (Tr. 241-42.)

On February 6, 2007, Dilbagh Saini, M.D., performed a psychiatric evaluation at the Nord Center. (Tr. 310-11.) Dr. Saini noted that Martinez had been seen at the Nord Center since 1993 and had been "mostly non-compliant with her treatments of drug and alcohol dependency and ha[d] been non-compliant with her treatment for depression and anxiety symptoms." (Tr. 310.) Dr. Saini diagnosed depressive disorder not otherwise specified, polysubstance dependence including alcohol and cocaine, personality disorder not otherwise specified with dependent and histrionic traits, and arthritis of the neck and lower back. (Tr. 311.)

*Hearing Testimony*

At her administrative hearing on November 26, 2007, Martinez testified that she last worked in 2004 as a teacher for Head Start and previously had worked as a teacher or in childcare for fifteen years.  (Tr. 424-25.)  She was discharged from Head Start after another teacher complained about her performance.  (Tr. 427.)

In 2000, she began seeing Dr. Shah to treat her back problems and for pain management.  (Tr. 428.)  She was prescribed Flexeril, Celebrex, and Tramadol for her pain.  *Id*.  Other pain treatment included trigger point and epidural shots.  (Tr. 429.)

Martinez also sought treatment at the Nord Center for depression and addiction recovery.  (Tr. 430.)  She stated that she did not leave the house for nearly three years except to receive treatment.  *Id*.  She was prescribed Paxil for her depression.  (Tr. 429.)  She testified that she had not used cocaine since August of 2007.  (Tr. 432.)

At the time of her hearing, Martinez was living with her boyfriend, with whom she had reconciled, and their respective adult sons.  (Tr. 433-35.)

The ME, a board certified psychiatrist, testified that Martinez's mental impairments equaled Listings 12.04, 12.08 and 12.09 when her cocaine abuse was factored in.  (Tr. 451.)  The ME explained that under these three Listings, Martinez's limitations under the B criteria would be as follows: (1) moderate limitations with respect to activities of daily living; (2) moderate limitations with respect to social functioning; and (3) marked limitations with respect to maintaining concentration, persistence and pace.  (Tr. 541-52.)  He further indicated that she

would experience one or two episodes of decompensation.[1] When asked to consider Martinez's limitations under the B criteria excluding the use of cocaine, the ME responded that he would expect: (1) mild limitations with respect to activities of daily living; (2) moderate limitations with respect to social functioning; (3) mild limitations with respect to maintaining concentration, persistence and pace; and (4) one or two episodes of decompensation. (Tr. 452.)

The ME did, however, qualify, that it would be difficult to determine the influence of cocaine on Martinez because she had not been drug-free for any significant amount of time. (Tr. 453; 461.) He opined that, even without cocaine abuse, Martinez would be limited to "simple, low stress work, no quotas, conflict resolutions, limited exposure to public." (Tr. 454.) While being examined by counsel, the ME stated that he could not say whether Martinez's condition became better or worse since March 2007 – a date posited by Martinez's counsel as a drug-free time span (less the one relapse in August which Martinez identified as the last date she tested positive for cocaine use). (Tr. 456-61.)

The ALJ asked the VE to consider a hypothetical worker with the following limitations: a forty-seven year-old person with an associate arts degree and a vocational background identical to that of Martinez. (Tr. 466.) Such person was limited to light exertional work and could not climb ladders, ropes, or scaffolds. *Id*. The hypothetical further limited the subject to simple, routine work without high production quotas, only superficial interaction with co-workers and occasional interaction with the public devoid of negotiation or confrontation. (Tr. 466.) The VE

---

[1] In order to meet any of the aforementioned Listings, both the A and B components of a Listing must be satisfied. To satisfy the B criteria of these listings, a claimant must exhibit marked limitations in two of these categories or marked limitations in one category along with repeated episodes of decompensation each of extended duration. *See* 20 C.F.R. § Pt. 404, Subpart P, App. 1.

7

testified that such an individual would be unable to perform Martinez's past relevant work. *Id*. However, the VE identified several examples of jobs such a person could perform, including cleaning/housekeeping, mail clerk, and carwash attendant. (Tr. 466-67.) The ALJ then asked a second hypothetical that included the additional limitation of being off task twenty percent of the time due to depression and anxiety. (Tr. 467.) The VE believed that such a person was unemployable. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

---

[2] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Martinez was insured on her alleged disability onset date, and remained insured through December 31, 2009. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Martinez must establish a continuous twelve month period of disability commencing between November 15, 2004 and December 31, 2009. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Martinez established medically determinable, severe impairments, due to degenerative disc disease of the lumbar and cervical spine, polysubstance dependence, depressive disorder, and personality disorder. (Tr. 17.) The ALJ further found that Martinez's polysubstance abuse was a material factor contributing to her disability. *Id*. Without substance abuse, Martinez's remaining impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. He found that Martinez is unable to perform her past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Martinez is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

9

record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Martinez claims the ALJ erred by: (1) employing an improper evaluation when considering whether substance abuse was a material contributing factor; and (2) failing to proffer an accurate hypothetical to the VE. Each will be discussed in turn.

### *Substance Abuse*

Martinez argues the ALJ erred by finding that her substance abuse was a material contributing factor to her disability because the ME was unable to separate her substance abuse from her other severe impairments. (Pl.'s Br. at 15-20.) The Commissioner disagrees and asserts that the ALJ finding substance abuse was a material contributing factor is supported by substantial evidence. (Def.'s Br. at 7-9.) Pursuant to statute, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

10

The Social Security Administration uses the following procedure to determine whether a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (a) General. ***If we find that you are disabled and have medical evidence of your drug addiction or alcoholism***, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis added).

"The plain text of the relevant regulation requires the ALJ first to determine whether [claimant] is disabled. The ALJ must reach this determination initially ... using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. " *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (citations omitted); *accord Drapeau v. Massanari*, 10 Fed. Appx. 657, 662 (10th Cir. 2001); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *Williams v. Barnhart*, 338 F.

Supp.2d 849, 862-865 (M.D. Tenn. 2004). The ALJ found that Martinez was disabled with substance abuse, but was not disabled independent of substance abuse. The burden of proving that substance abuse was not a contributing factor material to the disability determination falls on the claimant, but "[i]f the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise- acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Brueggemann*, 348 F.3d at 693; *see also Frederick v. Barnhart*, 317 F. Supp. 2d 286 (W.D.N.Y. 2004); *Dye v. Comm'r of Soc. Sec.*, 2008 U.S. Dist. LEXIS 86078 (S.D. Ohio 2008) ("If the [Commissioner] cannot separate the use of drugs from the disability, then the [Commissioner] will find that such use is not material under 20 C.F.R. § 404.1535(b).") (*citing McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002)); *Sherrill v. Barnhart*, 2006 U.S. Dist. LEXIS 96264 (D. Kan. 2006) ("In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to the claimant.")

Martinez argues the ALJ erred by finding her substance abuse was a material contributing factor because it was unreasonable for the ALJ to determine that he could separate out the effects of the substance where the ME could not. (Pl.'s Br. at 17-18.) The ME testified that he was unable to determine whether Martinez, at the time of the hearing, had improved her ability to function. Specifically, the ME opined that the short time span since Martinez's last positive drug test and the inconclusive medical records made it impossible for him to determine whether her mental condition had improved. (Tr. 455-60.) He did testify, however, that she would not have disabling level symptoms if she stopped using cocaine. (Tr. 452-53.) Implicit in Martinez's argument is that the ALJ's finding was unreasonable because: (1) there was no medical evidence to support such a finding; and (2) the ALJ's finding contradicts the ME's

12

testimony that the amount of time Martinez had been drug-free was an insufficient frame of comparison.

According to the ALJ, he was able to separate Martinez's substance abuse based primarily on his finding that Martinez, "when not abusing drugs and alcohol from 2000 to 2004 ... was able to successfully perform skilled and semi-skilled work." (Tr. 27.) This finding appears to be based on the assumption that Martinez's mental limitations, absent substance abuse, were of similar severity during this period of employment as on and after the onset date. An ALJ may look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse. *See, e.g., Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004). However, Martinez did not claim to be disabled during the 2000 to 2004 time frame. Moreover, the record is devoid of any medical records related to Martinez's mental health during this time frame. As such, it is questionable whether the ALJ could reasonably rely upon this time period to separate Martinez's substance abuse from her other mental impairments. Nonetheless, reading the ALJ's opinion as a whole, the ALJ clearly relies on other factors as well. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Judicial review of the Secretary's findings must be based on the record as a whole. Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council.") (*citing Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)); *accord Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635 (N.D. Ohio Oct. 31, 2007).

First, the Court disagrees with Martinez's characterization of the ME's testimony, notably the assertion that the ME was unable to separate out Martinez's substance abuse from

13

her other mental impairments. The ME expressly testified that, absent cocaine abuse, Martinez's mental limitations alone would not satisfy the B criteria under the relevant Listings, rendering her not disabled.[3] (Tr. 452.) The ME's subsequent qualification regarding his inability to determine improvement after a brief period of sobriety is not inherently contradictory with the above testimony. The ME's testimony can fairly be construed as stating that while Martinez would not be disabled without the effects of substance abuse, it was unclear whether Martinez had been sober long enough to have reached that point. Courts have recognized that the determination of whether substance abuse is a material contributing factor will necessarily be hypothetical when the claimant is actively abusing alcohol or drugs. *See Brueggemann*, 348 F.3d at 695. It was not inconsistent for the ME to testify hypothetically that Martinez's mental limitations would not meet the Listings absent substance abuse while acknowledging that her brief period of sobriety made reliance on the objective medical evidence of record during that short time tenuous. Both parties concede that the regulations do not require a period of sobriety before a determination can be made as to whether substance abuse is a contributing material factor.[4] In his opinion, the ALJ explicitly cites the ME's opinion that Martinez would not meet the B criteria without drugs or alcohol. (Tr. 19-20.)

In addition, the ALJ also found that Martinez engaged in activities that involved greater responsibility since her last positive drug test in August of 2007. (Tr. 23.) Martinez testified

---

[3] *See* Note 1, *supra*.

[4] Indeed, such a requirement would actually encourage substance abusers applying for disability benefits to continue their abuse if comparison to a prolonged period of sobriety were the only acceptable method of separating out a claimant's substance abuse from his or her other impairments.

14

that, prior to her period of sobriety, she did not socialize and never left the house except to attend medical appointments. (Tr. 21.) The ALJ noted that after Martinez stopped taking drugs, she was able to get more involved in her son's life and help him with his own mental conditions. (Tr. 20-23.) Finally, the ALJ also found that Martinez's statements concerning her level of functioning were not entirely credible based on therapy notes suggesting that she "appears to malinger and create issues." (Tr. 23, 318.)

For the foregoing reasons, the ALJ's finding that he could separate Martinez's substance abuse from her other mental impairments was not unreasonable and was based on substantial evidence of record.

### *RFC Assessment and Hypothetical*

Martinez asserts that the ALJ's mental RFC assessment and corresponding hypothetical question to the VE were not supported by substantial evidence. (Doc. No. 18 at 13.) Specifically, Martinez argues that the ALJ failed to fully incorporate Dr. Wagner's opinion that Martinez should not be exposed to stress in the job environment. *Id*. at 12. In addition, Martinez asserts that the ALJ erred by not including "low stress" and "no quotas" limitations as suggested by the ME. *Id*. at 13.

First, the ALJ clearly considered the opinion of Dr. Wagner, finding as follows:

> I also find significant the State Agency psychological consultants' [Dr. Wagner] opinion that the claimant can perform simple, routine jobs not involving excessive interaction with others (Exhibit 12F). I find that this assessment is consistent with the claimant's functioning without consideration of drug use and therefore assign it great weight.

(Tr. 24.)

The Court finds no merit in the argument that the ALJ failed to evaluate Dr. Wagner's

opinion in accordance with SSR 96-6p.[5] Though the ALJ's discussion is admittedly brief, it is sufficient under the regulations. The ALJ also assigned "great weight" to the ME's opinion that Martinez should be restricted to simple, low stress work with no quotas or conflict resolution, as well as limited exposure to the public. (Tr. 24.) Because the ALJ accorded "great weight" to both the ME and Dr. Wagner's opinions, Martinez asserts that the ALJ's hypothetical was inaccurate because `it allegedly failed to incorporate stress restrictions.

The ALJ's hypothetical restricted a person with Martinez's limitations to simple, routine work without high production quotas, only superficial interaction with co-workers and occasional interaction with the public devoid of negotiation or confrontation. (Tr. 466.) The Court finds that these limitations reasonably encompass a low stress environment. Martinez has not argued that "low stress" is a term of art in the vocational field that requires greater restrictions than those found by the ALJ, nor has Martinez attempted to argue that a low stress limitation would have necessarily excluded the jobs identified by the VE. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *accord Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006).

Finally, Martinez argues that the ALJ's prohibition against "high production quotas" is not sufficiently limiting, as the ME believed that Martinez should be limited to work with no quotas at all. (Doc. No. 18 at 15.) A hypothetical question must precisely and comprehensively

---

[5] SSR 96-6p requires an ALJ to explain the weight given to findings made by State Agency consultative examiners.

16

set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

First, the Court notes that while the ALJ assigned great weight to the ME's opinion, which included a prohibition against quotas, it does not necessarily follow that the ALJ adopted the ME's opinion in its entirety or without minor reservations. Second, Martinez has not argued that any of the jobs identified by the VE contained quotas. The definitions of these jobs, as set out in the Dictionary of Occupational Titles, do not make any specific or even general reference to quotas, nor do the descriptions lend themselves to the inference of a quota.[6] In addition, in at least one case, a VE has identified mail clerk as a job that does not require any production quotas. *See, e.g., Lembke v. Barnhart*, 2006 U.S. Dist. LEXIS 94154 (W.D. Wisc. Dec. 29, 2006) (remanded on other grounds). In a decision from within this Circuit, a VE has identified janitor as a job that does not require any production quotas. *See Sanders v. Comm'r of Soc. Sec.*, 2004 U.S. Dist. LEXIS 27039 (E.D. Mich. Dec. 22, 2004). A comparison of the Janitor position, DICOT 382.664-010, with the Cleaner /Housekeeping position reveals similar occupational demands, except that the Janitor position involves additional duties and greater levels of aptitude in some areas. However, there is no reason to assume that a prohibition against quotas would preclude the Cleaner /Housekeeping position and not the Janitor position. Even without

---

[6] The VE identified the following jobs: Cleaner/Housekeeping, DICOT 323.687-014; Carwash Attendant, Automatic, DICOT 323.687-014; and Mail Clerk, DICOT 209.687-026.

17

considering the Carwash Attendant position, the remaining two jobs identified by the VE exist in the following numbers: 3,950 jobs available in Northeast Ohio, 17,700 in the state of Ohio, and 1,457,000 nationally.  (Tr. 466-67.)  Though no precise number has been established as to what constitutes a significant number of jobs, the quantity cited by the VE has been found sufficient in numerous cases.[7]  As Martinez has not shown that a prohibition against all quotas would have changed the VE's opinion on the jobs identified, a remand would be a useless formality.  *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Sharp v. Barnhart*, 2005 U.S. App. LEXIS 23381 (6th Cir. 2005) (even if the ALJ did not comply with the procedural requirements for rejecting the opinion of a treating physician, any error in this respect was harmless because it was never explained why an individual afflicted with knee and ankle problems like claimant would miss about 1 in 3 workdays); *cf. Fisher*, 869 F.2d at 1057; *Kornecky*, 167 Fed. Appx. at 508.

---

[7] *See, e.g., Harmon v. Apfel*, 168 F.3d 289, 292-93 (6th Cir. 1999) (finding that 700 jobs locally and 700,000 nationally constituted a significant number of jobs); *Kappesser v. Comm'r of Soc. Sec.*, No. 95-5387, 1995 WL 631430, at **4 (6th Cir. Oct. 26, 1995) (finding that 422 jobs locally constituted a significant number of jobs); *Taylor v. Chater*, No. 95-5157, 1995 WL 592031, at **1 (6th Cir. Oct. 5, 1995) (finding that 640 jobs locally constituted a significant number of jobs); *Bishop v. Shalala*, No. 94-5375, 1995 WL 490126, at **2-3 (6th Cir. Aug. 15, 1995) (finding that 6,100 jobs nationally constituted a significant number of jobs); *Lewis v. Sec'y of Health & Human Servs.*, No. 94-1807, 1995 WL 124320, at **1 (6th Cir. March 22, 1995) (finding that 14,000 jobs nationally constituted a significant number of jobs); *Weaver v. Sec'y of Health & Human Servs.*, No. 94-5060, 1994 WL 419627, at **1 (6th Cir. Aug. 10, 1994) (finding that 500 jobs within a 150 mile radius of the claimant's home, *i.e.*, the local economy, constituted a significant number of jobs); *Stewart v. Sullivan*, No. 89-6242, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (finding that 125 jobs locally and 400,000 nationally constituted a significant number of jobs).

As such, Martinez's second assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

s/ Greg White  
U.S. Magistrate Judge

Date: August 18, 2009